**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

FRAUD FREE TRANSACTIONS LLC,

          Plaintiff,

        v.

PING IDENTITY CORPORATION,

          Defendants.

C.A. No. 25-302-GBW

**PLAINTIFF FRAUD FREE TRANSACTIONS LLC'S OPPOSITION
TO DEFENDANT PING IDENTITY CORPORATION'S MOTION
TO STAY PENDING APPEAL OF RELATED CASE**

*Of Counsel:*

John S. LeRoy
Thomas A. Lewry
Sangeeta G. Shah
Reza Roghani Esfahani
**BROOKS KUSHMAN P.C.**
150 W. Second St., Suite 400N
Royal Oak, Michigan 48067-3846
(248) 358-4400 / Fax: (248) 358-3351
Email: jleroy@brookskushman.com
      tlewry@brookskushman.com
      sshah@brookskushman.com
      resfahani@brookskushman.com

Daniel A. Taylor (No. 6934)
Megan Ix Brison (No. 6721)
**SMITH KATZENSTEIN & JENKINS
LLP**
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
dat@skjlaw.com
mib@skjlaw.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

II.     SUMMARY OF ARGUMENT ....................................................................................... 2

III.    STATEMENT OF THE FACTS ...................................................................................... 3

        A.      The claims of the '768 Patent recite material and distinguishing claim
                limitations that are not recited in the claims of the '950 and '215 Patents
                on appeal. ........................................................................................................ 3

        B.      The complaint in this case pleads material factual allegations addressing
                patent eligibility that were not pled in *Okta I* or *Ping I*. .......................................... 4

IV.     LEGAL STANDARD ..................................................................................................... 5

V.      ARGUMENT .................................................................................................................. 5

        A.      The Court should deny Ping's motion because the '768 Patent claims
                recite material limitations not present in the '215 '950 Patent claims
                on appeal ........................................................................................................ 6

        B.      The Court should deny Ping's motion because the Complaint in this case
                includes factual allegations concerning the eligibility of the asserted
                claims that are not alleged in *Okta I* or *Ping I*, and that Ping ignores .................. 8

        C.      The Status of Litigation Does Not Favor a Stay ...................................................... 9

        D.      A Stay Would Prejudice FFT and Create a Tactical Imbalance .......................... 10

VI.     CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

## Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    890 F.3d 1354 (Fed. Cir. 2018) ........................................................................... 9

*Advanced Gynecology & Laparascopy of N. Jersey, P.C. v. Cigna Health & Life Ins. Co.*,
    2023 WL 11990009 (D.N.J. Feb. 7, 2023) ........................................................ 10

*Advanced Microscopy Inc. v. Carl Zeiss Microscopy, LLC*,
    2016 WL 558615 (D. Del. Feb. 11, 2016) .......................................................... 10

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
    2021 WL 616992 (D. Del. Feb. 17, 2021) ............................................................ 5

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) .................................................................. 6, 8, 9

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019) ........................................................................... 9

*Clinton v. Jones*,
    520 U.S. 681 (1997) ......................................................................................... 5, 7

*Corteva Agriscience LLC v. Monsanto Co.*,
    2023 WL 3119968 (D. Del. Apr. 27, 2023) ......................................................... 5

*Data Engine Techs. LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018) ......................................................................... 6, 8

*dlhBOWLES, Inc. v. Jiangsu Riying Elecs. Co.*,
    2021 WL 6335001 (N.D. Ohio Dec. 10, 2021) ................................................. 10

*EBuddy Techs. v. LinkedIn Corp.*,
    No. 20-CV-1501-MN-CJB, D.I. 56 (D. Del. Apr. 26, 2021) ............................... 8

*Gold v. Johns–Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir.1983) ............................................................................. 11

*Intellectual Ventures I LLC v. Toshiba Corp.*,
    2015 WL 3773779 (D. Del. May 15, 2015) ....................................................... 11

*TruePosition, Inc., v. Polaris Wireless, Inc.*,
    2013 WL 5701529 (D. Del. Oct. 21, 2013) ......................................................... 7

*Williams v. New Day Farms, LLC,*
    2010 WL 3522397 (S.D. Ohio Sept. 7, 2010) ................................................................ 10

**Statutes**

35 U.S.C. § 101 ................................................................................................................. 1, 2, 4, 8
35 U.S.C. § 282 ..................................................................................................................... 9

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On November 4, 2024, Plaintiff Fraud Free Transactions LLC ("FFT") filed parallel actions against Ping and Okta asserting infringement of U.S. Patent Nos. 11,551,215 (the "'215 Patent") and 12,093,950 (the "'950 Patent"). *See Fraud Free Transactions LLC v. Ping Identity Corp.*, No. 1:24-cv-1218-GBW, D.I. 1 (D. Del. Nov. 4, 2024) (hereinafter, "*Ping I*"); *Fraud Free Transactions LLC v. Okta, Inc.*, No. 1:24-cv-1219-GBW, D.I. 1 (D. Del. Nov. 4, 2024) (hereinafter, "*Okta I*"). Okta and Ping each moved to dismiss regarding the asserted patents claim ineligible subject matter under 35 U.S.C. § 101. *Ping I*, at D.I. 16; *Okta I*, at D.I. 15. On April 29, 2025, the Court granted Ping's motion to dismiss. *Ping I*, at D.I. 25. On May 29, 2025, FFT appealed the Court's judgment regarding the invalidity of the '215 and '950 Patents. (Ex. 1, FFT's Appeal Brief). The Court subsequently *sua sponte* stayed *Okta I* pending the outcome of FFT's appeal to the Federal Circuit in the Ping case. *Okta I*, at D.I. 24.

On March 11, 2025, FFT filed the instant action and a parallel action against Okta asserting infringement of U.S. Patent No. 12,229,768 (the "'768 Patent"). D.I. 1; *Okta II*, at D.I. 1. Ping and Okta again each moved to dismiss regarding that the asserted patent claims ineligible subject matter under 35 U.S.C. § 101, and those motions remain pending. D.I. 9; *Okta II*, at D.I. 11. On October 27, 2025, the Court, acknowledged Okta's outstanding motion to dismiss, and despite the pending appeal in *Ping I*, ordered the parties to "move forward" with the case "unless and until a motion to dismiss is granted." *Okta II*, at D.I. 17. That same day, the Court ordered the parties to "meet and confer and file a joint proposed Scheduling Order" by "no later than November 28, 2025." D.I. 16.

On December 12, 2025, Ping filed the instant motion to stay this action pending appeal in *Ping I*. FFT opposes the motion.

## II.    SUMMARY OF ARGUMENT

1.    This Court should deny Defendant Ping Identity Corporation's ("Ping's") motion because a stay pending an appeal of a Rule 12(b)(6) dismissal concerning *different* patent claims will not simplify the issues in this case and will only delay resolution of core disputes that must be addressed regardless of the appeal. Ping's motion hinges on the premise that an appeal concerning materially different patent claims will resolve threshold § 101 issues for the claims at issue in this case. But patent eligibility is evaluated on a *claim-by-claim basis* and frequently turns on *underlying factual questions*—including whether the claims' ordered combination reflects more than routine or conventional activity. Because the patent claims at issue in the appeal are materially different than those at issue in this case, those factual issues must be developed and resolved by this Court in the first instance. Ping offers *no* substantive comparison of distinguishing claim language or the factual allegations in the complaint in this case—allegations that must be taken as true at the Rule 12 stage but were not present in the *Ping I* case on appeal. Ping has thus failed to show, and cannot show, that a stay pending the appeal will simplify this case.

2.    Moreover, in FFT's action involving the same patent against Okta, Inc. ("Okta") the Court ordered the parties to "move forward" despite a pending motion to dismiss. *Fraud Free Transactions LLC v. Okta, Inc.*, No. 1:25-cv-00303-GBW, D.I. 17 (D. Del. Oct. 27, 2025) (hereinafter, "*Okta II*"). That decision underscores that pausing this action (based on an appeal of a motion to dismiss) would not promote efficiency or judicial economy, particularly where, as here, claim-specific § 101 issues and related factual questions remain to be addressed by this Court. Consistent with the approach taken in the *Okta* litigation, this case should likewise proceed.

3.    Staying this case pending an appeal on a Rule 12(b)(6) dismissal for *different* patent claims, *different* factual allegations in the complaint, and concerning claims for which no relevant fact discovery (or claim construction) has been undertaken, will improperly disrupt the orderly

2

progress of this litigation on the merits and unfairly prejudice FFT. For these reasons, the Court should deny Ping's motion to stay.

## III.    STATEMENT OF THE FACTS

### A.    The claims of the '768 Patent recite material and distinguishing claim limitations that are not recited in the claims of the '950 and '215 Patents on appeal.

The '768 Patent, although a member of the same patent family as the '950 and '215 Patents currently on appeal, contains materially different claims. D.I. 1-1, at 42–50. The '768 Patent includes 7 independent claims and 51 dependent claims. *Id.* Because FFT has not yet had the opportunity to serve its infringement contentions, FFT has, to date, asserted only dependent claims 8, 9, and 10, each of which ultimately depends from claim 1 ("Asserted Claims"). *Id.* at Claims 8–10. These claims recite distinguishing features not recited in the asserted claims of the '950 and '215 Patents currently on appeal.

Claim 1, for example, recites limitations defining the nature of the "determinations" required by the rules for concluding whether Multi-Factor Authentication ("MFA") is required, in a manner distinct from the asserted claims of the '950 and '215 Patents. *Id.* at 42. As recited in claim 1, the determinations are comparisons expressly defining: (1) what is being compared (e.g., a device identifier); (2) the reference against which it is compared (e.g., a device identifier defined for the requesting user); and (3) the source of that reference, such as information defined for the requesting user based on at least one prior request from the requesting user. *Id.* These limitations are not recited in the asserted claims of the '950 and '215 Patents, were not addressed by this Court in *Ping I* or *Okta I*, and are not at issue in the pending appeal.

Beyond the differences between the Asserted Claims and those of the '950 and '215 Patent claims, other claims of the '768 Patent also recite elements not present in the '950 and '215 Patent claims. For example, claim 24 recites the adjudication of different levels of risk based on an

3

aggregation of multiple risk determinations, resulting in values that trigger different types of MFA. D.I. 1-1 at Claim 24. The claimed risk level assignment based on aggregated comparison failures and associating those levels with different MFA responses is absent from the '950 and '215 Patent claims. As another example, claim 38 recites behavioral pattern comparisons not found in the '950 and '215 Patent claims. *Id.* at Claim 38. These behavioral comparisons allow evaluation of the likelihood of non-fraudulent activity by comparing prior user interaction behavior with current behavior. For instance, assessing differences in the timing and duration of completing web forms, where deviations may indicate fraud. *Id.* at 24:45–52.

These examples are illustrative, not exhaustive. Other exemplary claim elements present in the '768 Patent claims but absent from the '950 and '215 Patents include proxy-server detection as part of the claimed determinations and the use of a token as a device-identifying characteristic. *Id.* at Claims 12, 45, & 46. These claims and limitations impact the § 101 inquiry and were not addressed in *Ping 1* or *Okta 1*.

**B.    The complaint in this case pleads material factual allegations addressing patent eligibility that were not pled in *Okta I* or *Ping I*.**

In addition to the distinctions in the claims themselves, the Complaint in this case pleads claim-specific factual allegations that were not alleged in the prior complaints. *Compare* D.I. 1 at ¶¶36–37 *with Ping I*, at D.I. 1. As explained in the Complaint and relevant to patent eligibility, verifying a user's identity by "logging into a third-party account belonging to the requesting user," as required by claim 8, improves data security by enabling access to a requested entity without exposing sensitive verification data directly to that entity. D.I. 1 at ¶36. Instead, authentication occurs through a trusted third party with whom the user has a preexisting relationship and whom the verifying entity already trusts. *Id.* This approach both enhances security and streamlines identity verification by leveraging established trust relationships. *Id.*

4

Similarly, the "designated fraud prevention application" included on a predefined and trusted out-of-band mobile device as required by claims 9 and 10, improves security by providing a secure endpoint and encrypted communication channel. *Id.* at ¶37. Installation of the application requires an affirmative step by the user and may involve active participation by the service provider, including designation of an acceptable out-of-band channel for a particular user. *Id.* Use of a designated fraud prevention application increases assurance that communications originate from the intended source, protects against impersonation by malicious actors, and further enhances security by requiring the authorized user's active participation through a trusted out-of-band channel. *Id.*

## IV.    LEGAL STANDARD

Courts have discretion to control their dockets and ensure that their cases are managed in the interest of justice. *Clinton v. Jones*, 520 U.S. 681, 683 (1997). "Courts generally consider three factors to determine whether a stay is appropriate: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage." *Corteva Agriscience LLC v. Monsanto Co.*, C.A. No. 22-1046-GBW, 2023 WL 3119968, at *1 (D. Del. Apr. 27, 2023) (citing *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, C.A. No. 15-1168-LPS, 2021 WL 616992, at *2 (D. Del. Feb. 17, 2021)). Ultimately, the moving party bears the burden to show the need for a stay. *Clinton*, 520 U.S. at 708.

## V.    ARGUMENT

The Court should deny Ping's motion because Ping has failed to demonstrate that a stay pending the appeal will simplify this case. As shown below, the claim language at issue in this case, and the complaint allegations that must be taken as true at the Rule 12(b)(6) stage, are

materially different from the claims and complaint allegations at issue in the appeal. Ping motion reflects an unfounded attempt to delay this case and obtain an improper tactical advantage over FFT.

### A.    The Court should deny Ping's motion because the '768 Patent claims recite material limitations not present in the '215 and '950 Patent claims on appeal

Patent eligibility must be determined on a claim-by-claim basis. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365–1366 (Fed. Cir. 2018); *see also Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1011–1012 (Fed. Cir. 2018) (deciding patent eligibility differently between independent claims of patents sharing the same specification). Eligibility may therefore differ among claims within the same patent—let alone across ***different*** patents.

Ping has not satisfied its burden because it conducts ***no*** claim-specific analysis of the '768 Patent. It does not compare any claim of the '768 Patent to any claim on appeal and does not state that they are identical. Instead, Ping relies on a conclusory assertion that its claims "merely mix and match the abstract ideas claimed in the '215 and '950 patents." D.I. 20 at 2–3. Ping's attorney argument is demonstrably incorrect.

The claims of the '768 Patent include numerous limitations absent from the '950 and '215 Patent claims, and those differences preclude any assumption that eligibility for the three patents will rise or fall together. Claim 1, for example, defines the "determinations" used to decide whether MFA is required through expressly claimed comparisons specifying what is compared, to what it is compared, and the source of the comparison data. D.I. 1-1 at Claim 1.

Other claims further underscore the point. Claim 24 recites limitations concerning adjudicating different levels of risk based on an aggregation of multiple risk determinations, with different risk levels triggering different MFA responses which are not present in the '950 and '215 Patent claims. *Id.* at Claim 24. Claim 38 recites behavioral pattern comparisons that assess the

likelihood of non-fraudulent activity by comparing prior and current user interactions, another feature absent from the appealed patents. *Id.* at Claim 38. Still further examples include proxy-server detection and the use of a token as a device-identifying characteristic. *Id.* at Claims 12, 45, & 46.

These examples are illustrative, not exhaustive. They are sufficient, however, to show that the eligibility of the '768 Patent claims requires a separate, claim-specific analysis that will not be resolved by an appeal involving ***different*** patents. As the moving party, Ping bears the burden of demonstrating simplification, and it has not done so. *Clinton*, 520 U.S. at 708; *TruePosition, Inc., v. Polaris Wireless, Inc.*, C.A. No. 12-646-RGA-MPT, 2013 WL 5701529, at *5 (D. Del. Oct. 21, 2013) (denying a motion to stay "where the scope of the issues in litigation substantially exceeds the scope of the issues on review") , *report and recommendation adopted*, C.A. No. 12-646-RGA, 2013 WL 6020798 (D. Del. Nov. 12, 2013).

Ping offers ***no*** analysis whatsoever of the '768 Patent's claims. D.I. 20, at 2–3. Nowhere does Ping analyze how the claims of the '768 Patent (comprised of ***58 claims*** with distinct limitations) correlate to the claims of the '950 and '215 Patents that are subject to appeal. *Id.* Rather than explaining why the '768 Patent claims should rise or fall together with the claims of the '950 and '215 Patents, Ping attempts to fill the analytical vacuum created by its failure to conduct ***any*** substantive comparison of claim language, limitations, or functionality by repeating its conclusory characterization. *See Id.* at 2 ("The claims of the '768 patent are directed to a ***combination*** of abstract ideas . . . found to be [] unpatentable . . . .");[1] *Id.* ("The claims of the '768 patent also fail . . . because they ***merely mix and match*** the abstract ideas claimed in the '215 and '950 patents."); *Id.* at 2–3 ("the '768 patent [] ***merely combin[es]*** the claim limitations of the '215 and '950

---

[1] All emphasis added unless otherwise noted.

patents"); *Id.*, at 3 ("[T]he '768 patent's claims are **merely a reorganized version** of the '215 and '950 patents."); *Id.*, at 4. ("All three patents . . . most importantly **mix and match** claim language . . . ."); *Id.* ("[T]he '768 patent **merely combines** abstract ideas from the '950 and '215 patents."); *Id.* ("[T]he '768 patent is **merely the combination** of . . . ideas this Court has deemed to be abstract ideas."). Repetition of a conclusion, however, does not substitute for analysis.

As demonstrated above, Ping's conclusory assertions fail to address the differences in the claims—differences this Court **must** take into account in its patent eligibility analysis under § 101. *Berkheimer*, 881 F.3d at 1365–1366; *Data Engine Techs.*, 906 F.3d at 1011–12. Because Ping has not shown that the appeal will resolve, or even meaningfully narrow, the claim-specific eligibility questions presented here, a stay will not simplify the issues in this case and is therefore unwarranted. Indeed, in similar situations, courts in this district, have observed that "in recent years, particularly post *B[e]rkheimer*, the reality is that fewer motions to dismiss are being granted in their entirety, especially in cases involving multiple patents just as a statistical matter . . . [o]ften it's because there's a potential fact issue." *EBuddy Techs. v. LinkedIn Corp.*, C.A. No. 20-1501-MN-CJB, D.I. 56 (D. Del. Apr. 26, 2021) (denying a motion to stay where the case concerned subject matter eligibility of four patents).

**B.    The Court should deny Ping's motion because the Complaint in this case includes factual allegations concerning the eligibility of the asserted claims that are not alleged in *Okta I* or *Ping I*, and that Ping ignores**

FFT's plausible factual allegations in the Complaint regarding patent eligibility must be taken as true. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317–1318 (Fed. Cir. 2019) (finding that "[t]he district court erred by not accepting . . . as true" the "plausible and specific factual allegations that aspects of the claims are inventive").

Under *Alice* step two, a claim is patent-eligible where its limitations, considered as an ordered combination, "involve more than performance of 'well-understood, routine, [and]

conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (cleaned up). Whether a claim element, or an ordered combination of elements, was well-understood, routine, and conventional at the time of the invention is a question of ***fact***. *Id.*, at 1368–69.

In its Complaint in this case, FFT plead claim-specific factual allegations addressing inventiveness under *Alice* step two, which were not present in *Ping I*. *Compare* D.I. 1 at ¶¶36–37, *with Ping I*, at D.I. 1. At the pleading stage, FFT's plausible factual allegations must be taken as true. *Cellspin*, 927 F.3d at 1317–1318. Ping ignores these dispositive complaint allegations in *Ping I* because the appeal of that case will not address them. Ping has not shown, and cannot show, that the claims of the '768 Patent, viewed as an ordered combination, were well-understood, routine, or conventional. Because resolution of these factual issues is required to assess eligibility, this case must proceed so the parties can develop the evidentiary record. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018) ("Because the patent challenger bears the burden of demonstrating that the claims lack patent eligibility, 35 U.S.C. § 282(a), there ***must be evidence*** supporting a finding that the additional elements were well-understood, routine, and conventional.")

A stay would only delay that necessary inquiry and is therefore unwarranted.

## C.    The Status of Litigation Does Not Favor a Stay

Although styled as a motion to stay pending appeal, Ping's motion is, in substance, an attempt to halt this case pending resolution of its Rule 12(b)(6) motion to dismiss. *See* D.I. 9. But Ping knows that in an identical situation this Court in *Okta II* ordered the parties to "move forward" notwithstanding a pending motion to dismiss. *Okta II*, at D.I. 17. Unable to reconcile that outcome with its request here, Ping repackages its request as a stay "pending appeal," even though, as explained above, it makes ***no*** effort to show how the claims of the '768 Patent or the factual

allegations in the complaint directed to *Alice* Step Two correlate to, or rise and fall with, the claims of the '950 and '215 Patents on appeal.

Ping further argues that the early stage of this litigation favors a stay. D.I. 20 at 5. That argument carries little weight. Courts have repeatedly held that the mere filing of a dispositive motion does not constitute good cause to halt or stay the proceedings. *See e.g., Advanced Gynecology & Laparascopy of N. Jersey, P.C. v. Cigna Health & Life Ins. Co.*, No. CV 19-22234 (ES) (MAH), 2023 WL 11990009, at *2 (D.N.J. Feb. 7, 2023) ("[It is] 'well settled that the mere filing of a dispositive motion does not constitute 'good cause' for the issuance of a discovery stay[.]'") (citations omitted); *dlhBOWLES, Inc. v. Jiangsu Riying Elecs. Co.*, No. 5:21-CV-170, 2021 WL 6335001, at *2 (N.D. Ohio Dec. 10, 2021) ("'[O]ne argument that is usually deemed insufficient to support a stay of discovery is that a party intends to file, or has already filed, a motion to dismiss for failure to state a clam under Rule 12(b)(6).'") (quoting *Williams v. New Day Farms, LLC*, No. 2:10-cv-394, 2010 WL 3522397, at *1 (S.D. Ohio Sept. 7, 2010)). C*f. Advanced Microscopy Inc. v. Carl Zeiss Microscopy, LLC*, C.A. No. 15-516-LPS-CJB, 2016 WL 558615, at *2 (D. Del. Feb. 11, 2016) (Explaining Chief Judge Stark's preference that "generally, we will not defer the [Case Management Conference] and scheduling process solely due to the pendency of" a motion to dismiss, transfer or stay." finding that "in the main, cases filed by a plaintiff should move forward.").

**D.    A Stay Would Prejudice FFT and Create a Tactical Imbalance**

Ping contends that a stay would not prejudice FFT because FFT does not currently compete with Ping. D.I. 20 at 6. That argument misses the mark. While FFT is not currently a direct market competitor, FFT's legitimate business interests are nevertheless harmed by delay. Dr. Michael Sasha John ("Dr. John"), the inventor of the '768 Patent, co-founded Koakia in 2009 "to develop a platform for real-time identity and transaction verification and proactive online fraud

prevention." D.I. 1 at ¶19. In connection with that work, Dr. John developed valuable intellectual property, which he assigned to FFT and which FFT licenses consistent with Dr. John's longstanding practice of monetizing intellectual property as a core business asset. *Id.* at ¶8 ("Many of Dr. John's patents have been successfully licensed and serve as the core intellectual property of several companies."). Delaying FFT's ability to enforce and license its patent rights directly undermines those business interests.

This Court has previously recognized that a stay prejudices a patent holder even where the parties are not competitors, because delay alone can hinder the patentee's pursuit of legitimate licensing and enforcement objectives. *Intellectual Ventures I LLC v. Toshiba Corp.*, C.A. No. 13-453-SLR/SRF, 2015 WL 3773779, at *2 (D. Del. May 15, 2015) ("Because patent licensing is a core aspect of IV's business, . . . I find that a stay would unduly prejudice and present a clear tactical disadvantage to IV."). Notably, while "'[i]t is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party.'" *Id.* (citing *Gold v. Johns–Manville Sales Corp.,* 723 F.2d 1068, 1075–76 (3d Cir.1983)). Yet, Ping makes no showing that it would suffer any prejudice absent a stay.

Thus, because a stay would place FFT at a tactical disadvantage by delaying its ability to clarify the scope and strength of its patent rights while allowing Ping to continue its accused activities without resolution, this factor weighs against a stay or is at least neutral.

## VI.    CONCLUSION

For all the foregoing reasons, FFT respectfully requests that the Court deny Ping's motion to stay.

11

Respectfully submitted,

Dated: January 8, 2026

*Of Counsel:*

**SMITH KATZENSTEIN & JENKINS LLP**

John S. LeRoy
Thomas A. Lewry
Sangeeta G. Shah
Reza Roghani Esfahani
**BROOKS KUSHMAN P.C.**
150 W. Second St., Suite 400N
Royal Oak, Michigan 48067-3846
(248) 358-4400 / Fax: (248) 358-3351
Email: jleroy@brookskushman.com
        tlewry@brookskushman.com
        sshah@brookskushman.com
        resfahani@brookskushman.com

*/s/ Daniel A. Taylor*
Daniel A. Taylor (No. 6934)
Megan Ix Brison (No. 6721)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
dat@skjlaw.com
mib@skjlaw.com

*Attorneys for Plaintiff.*